UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-22032

CAROLYN WILSON,

     Plaintiff,

v.

CARNIVAL CORPORATION,
a Panamanian Corporation d/b/a
CARNIVAL CRUISE LINE,

     Defendant.

_____/

**COMPLAINT FOR DAMAGES
AND DEMAND FOR TRIAL BY JURY**

     Plaintiff, CAROLYN WILSON (hereinafter "MS. WILSON"), through undersigned counsel, sues Defendant, CARNIVAL CORPORATION, a Panamanian Corporation, d/b/a CARNIVAL CRUISE LINE, (hereinafter "CARNIVAL"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

     1.    MS. WILSON seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

     2.    This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

     3.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

     4.    Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by CARNIVAL.

     5.    MS. WILSON is *sui juris* and is a resident and citizen of the state of Georgia.

6.    CARNIVAL is a foreign corporation who is authorized to conduct and who does conduct business in the state of Florida, who at all times material hereto was and is doing business in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

7.    CARNIVAL is a citizen of the State of Florida and the nation of Panama.

8.    CARNIVAL, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

      a.    Operated, conducted, engaged in, or carried on a business venture; and/or

      b.    Had an office or agency; and/or

      c.    Engaged in substantial activity; and/or

      d.    Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9.    All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## DEFINITIONS AND FACTUAL ALLEGATIONS

10.    Hereinafter, the phrase, the "subject area," shall include, but not be limited to, the bed, the space between the bed and flooring, the bedframe, the mattress, the bed-railings, screws, and all material and effects pertaining thereto, including the lighting in the area, and the design, visual condition, and/or any other material pertaining to the bed, the space between the bed and flooring, the framing, the carpeting, the bedding, and the railings.

11.    At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, the *Mardi Gras*.

12.    At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject area involved in MS. WILSON'S incident.

13.    MS. WILSON'S incident occurred on or about May 14, 2022, while she was a fare paying passenger on CARNIVAL'S vessel, the *Mardi Gras*.

14.    On or about May 14, 2022, the first day of the cruise, MS. WILSON sat on the mattress of a bed in her interior stateroom on deck 15, cabin number 15480, in her handicap-accessible cabin. MS. WILSON placed her hand on the mattress to support herself while attempting to get up from the bed. However, when she carefully attempted to get up, the mattress spontaneously shifted and slid off the bed away from the flimsy bedframe, which was flat and without any barrier to prevent the mattress from sliding off the bed, causing her to fall to the floor sustaining permanent injuries to her knee, hip, and leg when the bedrail and/or metal and/or screws caught onto MS. WILSON'S right side.

15.    On the same day of her fall, on or about May 14, 2022, her daughter called the cabin steward, CARNIVAL'S employee, who did not immediately take MS. WILSON to the medical center for treatment despite informing CARNIVAL that she was injured.

16.    On May 14, 2022, CARNIVAL'S employee brought MS. WILSON ice. However, CARNIVAL'S employee did not bring her to the medical center for immediate medical attention.

17.    The following day, May 15, 2022, the cabin steward brought MS. WILSON a wheelchair and escorted her to the medical center.

18.    As a result, MS. WILSON suffered severe injuries, including, but not limited to, injuries to her hip and leg, peri-prosthesis, a spiral fracture, a compound fracture to her femur that required surger(ies), screws inside her leg, scarring, disfigurement, and a bruised arm.

19.    After MS. WILSON'S fall, CARNIVAL'S shipboard physician, also an employee of CARNIVAL, admitted her to the Intensive Care Unit ("ICU"), and promised her that CARNIVAL would transport her to the nearest hospital to receive treatment as soon as possible, but she remained on the ship for a number of days, which delayed her treatment, and caused her to experience prolonged and increased pain, suffering, and other injuries.

20.    At all relevant times, the dangerous and/or risk creating conditions include, but are not limited to the following:

    a.    Inadequate and/or lack of any barrier(s) on the bedframe failed to prevent the mattress from sliding, which lessened MS. WILSON'S control over her fall from the bed and onto the subject flooring; and/or

    b.    MS. WILSON attempted to stabilize herself on the mattress controlling her fall from the bed, but the inadequate bedframe failed to prevent and/or mitigate her incident, including, but not limited to, being unreasonably flat and/or slippery and/or unstable; and/or

    c.    The unreasonably dangerous amount of space between the bed and the flooring lacked adequate stability, which caused MS. WILSON'S impact; and/or

    d.    Unreasonably tall and/or long railings and/or protruding objects under the subject mattress lessened MS. WILSON'S control over her fall from the bed and onto the subject flooring and/or caused the impact; and/or

    e.    Unreasonably tall and/or long and/or protruding objects and/or screws and/or other metal(s) on the subject bedframe caused injuries; and/or

    f.    The unreasonably slippery and/or unstable subject bedframe; and/or

    g.    The unreasonably slippery and/or unstable subject mattress; and/or

h.   The unreasonably poorly maintained subject area; and/or

i.   The unreasonably poorly maintained subject bed and/or mattress; and/or

j.   The uneven and/or unstable bed and/or bedframe and/or mattress and/or railing(s) lacked uniformity in dimensions, which unreasonably hindered MS. WILSON'S ability to descend safely from the subject bed; and/or

k.   The contents of the subject bed lacked adequate slip resistant material; and/or

l.   The bed, mattress, railing(s) and/or screw(s) and/or metal object(s) during MS. WILSON'S impact and/or fall lacked adequate visual cues to help passengers see the bed's unreasonable configuration, as well as the lack of any safeguards to prevent the mattress from sliding off the bed, the protruding screw(s) and/or railing(s) and/or other metal object(s) (such as conspicuous tape/signs/stickers/coloring/other visual cues); and/or

m.  Inadequate warnings in the subject area; and/or

n.   CARNIVAL did not reasonably train crew members to adequately secure the mattress(es) to the bedframe(s); and/or

o.   CARNIVAL failed to ensure that handicap-accessible cabins were available with adequate bed-bases to prevent mattresses from unreasonably sliding off the beds; and/or

p.   The subject bed and/or bedframe and/or mattress should not have been used until it was safe for passengers' use; and/or

q.   People fell from these beds and/or these mattresses prior to MS. WILSON'S incident for similar reasons as MS. WILSON; and/or

r.   The subject bedframe and/or mattress did not have the proper parts and/or

device(s) to secure the mattress to prevent it from moving during passenger use; and/or

    s.  Other dangerous conditions that will be revealed through discovery.

21.  Each of these dangerous conditions alone was sufficient to cause MS. WILSON'S incident and injuries, and MS. WILSON is alleging that CARNIVAL was negligent as to each of these conditions separately and not cumulatively.

22.  CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the following:

    a.  MS. WILSON previously observed CARNIVAL'S crew members regularly use and/or observe and/or tend to the subject bed (i.e., cabin steward(s) moving the mattresses to make the beds), and MS. WILSON recalls seeing crew members use and/or observe them on at least one (1) to two (2) occasions, if not more, on the first day of the cruise and at the time of her incident, and these crewmembers were in the immediate vicinity, such that MS. WILSON reasonably infers that these crew members regularly used and/or tended to and/or observed the bed and therefore were or should have been familiar with the dangerous and/or risk-creating conditions thereof, and should have been aware of the dangerous conditions and warned of and/or removed the dangerous conditions. *See Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 F. App'x 531, 537 (11th Cir. 2018) ("In some cases the proprietor may be held to have constructive knowledge if . . . an employee of the proprietor was in the immediate area of the dangerous condition and could have easily seen . . . the hazard.") (*citing Alterman Foods, Inc. v. Ligon*, 246 Ga. 620, 272 S.E.2d 327, 330 (1980).

    b.  **<u>After</u>** MS. WILSON'S incident, CARNIVAL put her in a bed with an adequate barrier

between the mattress and the bedframe. The fact that CARNIVAL put MS. WILSON in a bed with an adequate barrier after her incident shows that CARNIVAL knew (or realized after the incident that CARNIVAL should have known) that the subject bed was dangerous such that CARNIVAL believed that a bed with a barrier to prevent the mattress from sliding was safer for MS. WILSON and/or for passengers with handicap accessible needs. *See Carroll v. Carnival Corp.*, 955 F.3d 1260, 1265 (11th Cir. 2020) ("Evidence that a ship owner has taken corrective action can establish notice of a dangerous or defective condition.").

c. **After** MS. WILSON'S incident, her daughters observed the mattress easily sliding off the bedframe due to the lack of barrier and/or unreasonably slippery material of the mattress and/or bedframe. CARNIVAL knew and its employee(s) observed that the subject bed was dangerous, but a reasonable person would not have been able to prevent the mattress from sliding off the bed suddenly. *Id.*

d. Furthermore, the dangers were and/or should have been known prior to MS. WILSON's incident because her daughters observed the mattress slide easily during use after MS. WILSON'S incident such that CARNIVAL should have been familiar with the dangers thereof, and CARNIVAL should have been aware of these conditions ever since it took possession of the subject bed, bedframe, railings, ship, and area.

e. MS. WILSON saw after she fell that the railings and/or screws and/or metal object(s) that she fell onto were protruding out, such that it appeared unreasonably dangerous for any passenger, especially a passenger in need of an adequate handicap-accessible cabin purchased at a higher price than a regular cabin.

f. CARNIVAL'S ship has furniture in other areas of the *Mardi Gras*, including, but not

limited to outdoor beds located on the balconies of cabins including such outdoor beds, which include framing of the outdoor mattress with a barrier between the frame of the furniture and the outdoor mattress itself, unlike the subject bed. *See Carroll v. Carnival Corp.*, 955 F.3d 1260, 1265 (11th Cir. 2020) ("Evidence that a ship owner has taken corrective action can establish notice of a dangerous or defective condition.").

g.  CARNIVAL'S older ships, including, but not limited to the *Sunrise*, include beds with a safer standard bedframe in the cabins – without protruding metal(s), without a cot-like framework, and/or without flat bedframes lacking any barriers and/or stability to support the mattress – as these safer bedframes on ships such as the *Sunrise* have a solid base,  unlike the unreasonably dangerous and unstable metal bedframes with protruding material on this subject newer ship the *Mardi Gras*.

h.  Upon information and belief, CARNIVAL participated in the installation and/or design of the subject cabin, or alternatively, CARNIVAL accepted the cabin with this bed with its design defects present after having been given an opportunity to inspect the ship and materials on it, including the subject bed, such that CARNIVAL should have known of the design defects of the subject bed before providing it for public use. These design defects include, but are not limited to, the structural dangers outlined in paragraph 20 of this Complaint. *See Francis v. MSC Cruises, S.A.*, 835 F. App'x 512, 517–18 (11th Cir. 2020) (pleading that, "[c]hoosing and/or approving" a material and "failing to inspect" it to discover it was unreasonably dangerous to make it safer sufficiently alleged negligent design or maintenance to meet notice pleading requirements under the Federal Rules of Civil Procedure) (*citing Palm Beach Golf*

*Center-Boca, Inc., v. John G. Sarris*, 781 F.3d 1245, 1260 (11th Cir. 2015) (noting that a complaint "need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").

i. Upon information and belief, there are relevant safety standards/recommendations/other guidelines regarding the safety of the subject area, including, but not limited to, prohibitions and/or recommendations against the deficiencies discussed in paragraph 20 of this Complaint, and CARNIVAL should have known of these standards/recommendations/other guidelines because whether such standards/recommendations/other guidelines are legally required for CARNIVAL to comply with or not, a fact-finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable Defendant should have done. *See Holderbaum v. Carnival Corp.*, 87 F. Supp. 3d 1345, 1356 (S.D. Fla. 2015) ("As previously noted, 'the law in the Eleventh Circuit . . . is that advisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence.' *Cook*, 2012 WL 1792628, at *3 (*citing Muncie Aviation Corp.*, 519 F.2d 1178; Frazier, 568 F.2d 378); *see also Giorgio*, 2006 WL 1042003, at *2. **Such guidelines are also probative of the defendant's constructive knowledge of the allegedly hazardous condition.**'") (emphasis added) (*citing Cook*, 2012 WL 1792628, at *3; *Donlon*, 2011 WL 6020574, at *6)).

j. CARNIVAL also knew or should have known of these dangerous conditions through inspecting the subject area involved in MS. WILSON'S incident, and if it did not know of these dangerous conditions, this was because CARNIVAL failed to adequately inspect the subject area prior to her incident. *See Francis v. MSC Cruises, S.A.*, 835 F.

App'x 512, 517 – 18 (11th Cir. 2020) ("Francis's complaint alleged that MSC breached its duty to her by, among other things, '[c]hoosing and/or approving . . . material that was unreasonably slippery,' '[c]hoosing and/or approving . . . material that was unreasonably slippery . . . and 'failing to reasonably inspect . . . material, discover it was unreasonably slippery, and make it safer.' Doc. 1 at 8. **Francis alleged theories of negligent design or maintenance sufficient to meet the notice pleading requirements of the Federal Rules of Civil Procedure**.") (emphasis added, citation omitted) (citing *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris*, 781 F.3d 1245, 1260 (11th Cir. 2015) (noting that a complaint "need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.").

k.   Moreover, CARNIVAL knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

23.   At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, and/or otherwise unsafe.

24.   The subject area and the vicinity lacked adequate safety features to prevent MS. WILSON'S fall and/or impact.

25.   These hazardous conditions were known, or should have been known, to CARNIVAL in the exercise of reasonable care.

26.   These hazardous conditions existed for a period of time before the incident.

27.   These conditions were neither open nor obvious to MS. WILSON.

28.   At all times relevant, CARNIVAL failed to adequately inspect the subject area and the vicinity for dangers, and CARNIVAL failed to adequately warn MS. WILSON of the dangers.

29.    At all times relevant, CARNIVAL had the ability to cure the deficiencies and to eliminate the hazards, but failed to do so, such that people, including MS. WILSON, hit the metal bedframe and/or fell.

30.    At all times relevant, CARNIVAL failed to maintain the subject area and the vicinity in a reasonably safe condition.

31.    At all times relevant, CARNIVAL participated in the design and/or approved the design of the subject area and the vicinity involved in MS. WILSON'S incident.

32.    At all times relevant, CARNIVAL participated in the installation and/or approved the installation of the subject area and the vicinity involved in MS. WILSON'S incident.

33.    The crewmembers of the *Mardi Gras* were in regular full-time employment of CARNIVAL and/or the ship, as salaried crewmembers, subject to the ship's discipline and master's orders.

34.    CARNIVAL had the right to hire and fire their employees and/or agents.

35.    CARNIVAL is directly responsible and liable for their actions and the actions of its employees and/or agents.

36.    The crewmembers, including the medical staff, were employees and/or actual agents and/or apparent agents of CARNIVAL, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

37.    The crewmembers were represented to MS. WILSON and the ship's passengers as employees of CARNIVAL through signs, documents, and/or uniforms. The crewmembers were also paid salary and/or hourly wage by CARNIVAL. CARNIVAL knew that the crewmembers represented themselves to be employees of CARNIVAL and allowed them to represent themselves as such. MS. WILSON detrimentally relied on these representations as she would not have

proceeded on the subject cruise had she believed the crewmembers were not employees of CARNIVAL.

## COUNT I
## NEGLIGENT FAILURE TO INSPECT

38.   MS. WILSON hereby adopts and re-alleges each and every allegation in paragraphs 1 through 37 as if set forth herein.

39.   CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

40.   This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately inspecting the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe for the use and enjoyment of its passengers.

41.   At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL breached the duty of reasonable care owed to MS. WILSON and were negligent by failing to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe, such that the unreasonably risk creating and/or dangerous conditions discussed paragraph 20 of the instant Complaint were present at the time of MS. WILSON'S incident.

42.   CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 20 of the instant Complaint.

43.   These risk-creating and/or dangerous conditions were caused by CARNIVAL'S failure to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe.

44.     Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

45.     CARNIVAL'S negligence proximately caused MS. WILSON great bodily harm in that, but for CARNIVAL'S negligence, MS. WILSON'S injuries would not have occurred.

46.     As a result of CARNIVAL'S negligence, MS. WILSON has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, loss of the value of her vacation, cruise, and transportation costs.

47.     The losses are permanent and/or continuing in nature.

48.     MS. WILSON suffered these losses in the past and will continue to suffer such loses in the future.

49.     **WHEREFORE**, Plaintiff, CAROLYN WILSON, demands Judgment against Defendant, CARNIVAL CORPORATION, a Panamanian Corporation, d/b/a CARNIVAL CRUISE LINE, for damages suffered and costs incurred, as well as for damages and costs that MS. WILSON will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, and lost earning capacity, loss of the value of MS. WILSON'S vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT II
## NEGLIGENT FAILURE TO MAINTAIN

50.    MS. WILSON hereby adopts and re-alleges each and every allegation in paragraphs

through 37, as if set forth herein.

51.    CARNIVAL owed a duty to exercise reasonable care under the circumstances for the

safety of its passengers.

52.    This duty includes, but is not limited to, the duty to provide its passengers reasonable

care by adequately maintaining the subject area and the vicinity.

53.    At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff

and/or representatives, who were acting in the course and scope of their employment and/or agency

with CARNIVAL, breached the duty of reasonable care owed to MS. WILSON and were negligent

by failing to adequately maintain the subject area and the vicinity, such that the unreasonably risk

creating and/or dangerous conditions discussed paragraph 20 of the instant Complaint were present

at the time of MS. WILSON'S incident.

54.    CARNIVAL either knew or should have known of these risk-creating and/or

dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in

paragraph 20 of the instant complaint.

55.    Moreover, these risk-creating and/or dangerous conditions were caused by

CARNIVAL'S failure to adequately maintain the subject area and the vicinity.

56.    Furthermore, the subject area and the vicinity were also on a cruise ship in the water

subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear

due to maritime conditions not necessarily present on land, waves, and other conditions unique to

maritime travel, and as such were "clearly linked to nautical adventure."

57.    CARNIVAL'S negligence proximately caused MS. WILSON great bodily harm in

that, but for CARNIVAL'S negligence, her injuries would not have occurred.

58.   As a result of CARNIVAL'S negligence, MS. WILSON has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, loss of independence, expense of hospitalization, medical and nursing care and treatment, lost wages, loss of future earning capacity, loss of the value of her vacation, cruise, and transportation costs.

59.   The losses are permanent and/or continuing in nature.

60.   MS. WILSON has suffered these losses in the past and will continue to suffer such losses in the future.

61.   **WHEREFORE**, Plaintiff, CAROLYN WILSON, demands Judgment against Defendant, CARNIVAL CORPORATION, a Panamanian Corporation, d/b/a CARNIVAL CRUISE LINE, for damages suffered and costs incurred, as well as for damages and costs that MS. WILSON will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, and lost earning capacity, loss of the value of her vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT III
## NEGLIGENT FAILURE TO REMEDY

62.   MS. WILSON hereby adopts and re-alleges each and every allegation in paragraphs 1 through 37 as if set forth herein.

63.   CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

64.    This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the subject area and the vicinity.

65.    At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to MS. WILSON and were negligent by failing to adequately remedy the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed in paragraph 20 of the instant Complaint were present at the time of MS. WILSON'S incident.

66.    CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 20 of the instant Complaint.

67.    Moreover, these risk-creating and/or dangerous conditions were caused CARNIVAL'S failure to adequately remedy the subject area.

68.    Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

69.    CARNIVAL'S negligence proximately caused MS. WILSON great bodily harm in that, but for CARNIVAL'S negligence, her injuries would not have occurred.

70.    As a result of CARNIVAL'S negligence, MS. WILSON has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, lost wages, and loss of future earning capacity, loss of the value

of her vacation, cruise, and transportation costs.

71.    The losses are permanent and/or continuing in nature.

72.    MS. WILSON has suffered these losses in the past and will continue to suffer such losses in the future.

73.    **WHEREFORE**, Plaintiff, CAROLYN WILSON, demands Judgment against Defendant, CARNIVAL CORPORATION, a Panamanian Corporation, d/b/a CARNIVAL CRUISE LINE, for damages suffered and costs incurred, as well as for damages and costs that MS. WILSON will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, scarring, disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of her vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT IV
## NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION

74.    MS. WILSON hereby adopts and re-alleges each and every allegation in paragraphs 1 through 37 as if set forth herein.

75.    At all times relevant, CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including MS. WILSON.

76.    Such duty includes, but is not limited to, the duty that CARNIVAL owes to warn passengers of any dangers that it knew or should have known were not open and obvious to MS. WILSON.

77.    Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

78.     At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to MS. WILSON and was negligent by failing to warn MS. WILSON of the dangerous conditions discussed in paragraph 20 of the instant Complaint.

79.     Furthermore, CARNIVAL knew or should have known of these dangerous conditions for the reasons discussed in paragraph 20 of this Complaint.

80.     These dangerous conditions were also created by CARNIVAL.

81.     CARNIVAL failed to adequately ensure there were no dangerous conditions that passengers needed to be warned of, and/or CARNIVAL failed to warn MS. WILSON despite knowing of the dangers.

82.     These dangerous conditions existed for a period of time before the incident.

83.     These conditions were neither open nor obvious to MS. WILSON.

84.     CARNIVAL'S breach was the cause in-fact of MS. WILSON'S great bodily harm in that, but for CARNIVAL'S breach her injuries would not have occurred.

85.     Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

86.     CARNIVAL'S breach proximately caused MS. WILSON great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

87.     As a result of CARNIVAL'S negligence, MS. WILSON has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of

capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, and loss of the value of her vacation, cruise, and transportation costs.

88.   The losses are permanent and/or continuing in nature.

89.   MS. WILSON has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, CAROLYN WILSON ("MS. WILSON"), demands Judgment against Defendant, CARNIVAL CORPORATION, a Panamanian Corporation, d/b/a CARNIVAL CRUISE LINE for damages suffered and costs incurred, as well as for damages and costs that MS. WILSON will suffer and incur in the future, as a result of MS. WILSON'S bodily injury, pain and suffering, disability, scarring, disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of independence, lost wages, lost earning capacity, loss of the value of her vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

### COUNT V
### NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT AREA AND THE VICINITY

90.   MS. WILSON hereby adopts and re-alleges each and every allegation in paragraphs 1 through 37, as if set forth herein.

91.   At all times material hereto, CARNIVAL owed a duty to its passengers, and in particular a duty to MS. WILSON, not to permit dangerous conditions to be in places where they could harm passengers, such as those discussed in paragraph 20 in the instant Complaint, as well as to design and install reasonable safeguards.

92.   At all times material hereto, CARNIVAL participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and to put the vessel on which MS. WILSON was injured into the channels of trade, and/or CARNIVAL approved of the subject vessel's design, including the design of the subject area and the vicinity.

93.   At all times material hereto, CARNIVAL manufactured, designed, installed, and/or approved of the *Mardi Gras*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular a duty to MS. WILSON, to design, install and/or approve of the subject area and the vicinity without any defects.

94.   At all times material hereto, CARNIVAL through its agents and/or employees who were acting in the course and scope of their employment and/or agency with CARNIVAL, designed, installed, and/or approved of the subject area and the vicinity involved in MS. WILSON'S incident, which was also in violation of the applicable industry standards/recommendations and/or other guidelines.

95.   CARNIVAL provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject area and the vicinity.

96.   CARNIVAL maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including the *Mardi Gras*, during the new build process.

97.   CARNIVAL has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

98.   CARNIVAL has the right to inspect and reject design elements before taking

possession of the ship.

99.   However, CARNIVAL permitted the dangerous conditions to be present in the subject area and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

100. The design flaws that made the subject area and the vicinity involved in MS. WILSON'S incident unreasonably dangerous were the direct and proximate cause of MS. WILSON'S injuries.

101. CARNIVAL is liable for the design flaws of the vessel, including of the subject area and the vicinity involved in MS. WILSON'S incident, which it knew or should have known of.

102. CARNIVAL failed to correct and/or remedy the defective conditions, despite the fact that CARNIVAL knew or should have known of the danger(s).

103. CARNIVAL'S breach was the cause in-fact of MS. WILSON'S great bodily harm in that, but for CARNIVAL'S breach her injuries would not have occurred.

104. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

105. CARNIVAL'S breach proximately caused MS. WILSON great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

106. As a result of CARNIVAL'S negligence, MS. WILSON has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, loss of independence, expense of hospitalization, medical and nursing care and treatment, loss of independence, and loss of the value of her vacation, cruise, and

transportation costs.

107. The losses are permanent and/or continuing in nature.

108. MS. WILSON has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, CAROLYN WILSON, demands Judgment against Defendant, CARNIVAL CORPORATION, a Panamanian Corporation, d/b/a CARNIVAL CRUISE LINE, for damages suffered and costs incurred, as well as for damages and costs that MS. WILSON will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, scarring, disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of independence, lost wages, lost earning capacity, loss of the value of her vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT VI**
**<u>NEGLIGENCE FOR THE ACTS OF CARNIVAL'S CREW, STAFF, EMPLOYEES,
AND/OR AGENTS, BASED ON VICARIOUS LIABILITY</u>**

109. MS. WILSON hereby adopts and re-alleges each and every allegation in paragraphs 1 through 37, as if set forth herein.

110. CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its patrons.

111. The crewmember who negligently failed to secure the subject mattress on the subject bedframe, as well as the people who were working in and/or who were and/or should have been responsible for inspecting, maintaining, cleaning, and/or securing the subject area, were agents of CARNIVAL, and specifically included the crewmember who improperly made and moved MS.

WILSON'S bed, for the following reasons:

    a.    They were the staff and/or employees of CARNIVAL, and/or were CARNIVAL'S agents, apparent agents, and/or servants; and/or

    b.    These staff, employees, and/or agents were subject to the right of control by CARNIVAL; and/or

    c.    These staff, employees, and/or agents were acting within the scope of their employment or agency; and/or

    d.    CARNIVAL acknowledged that these staff, employees, and/or agents would act on CARNIVAL'S behalf, and they accepted the undertaking.

112. CARNIVAL is vicariously liable for the acts of its staff, employees, and/or agents, as discussed in paragraph 20 of the instant Complaint.

113. CARNIVAL'S breach was the cause in-fact of MS. WILSON'S great bodily harm in that, but for CARNIVAL'S breach her injuries would not have occurred.

114. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

115. This negligence proximately caused MS. WILSON great bodily harm in that, but for this negligence, MS. WILSON'S injuries would not have occurred.

116. As a result of CARNIVAL'S negligence, MS. WILSON has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of her vacation, cruise, and transportation costs.

117.  The losses are permanent and/or continuing in nature.

118.  MS. WILSON has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, CAROLYN WILSON, demands Judgment against Defendant, CARNIVAL CORPORATION, a Panamanian Corporation, d/b/a CARNIVAL CRUISE LINE, for damages suffered and costs incurred, as well as for damages and costs that MS. WILSON will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, scarring, disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of independence, lost wages, and lost earning capacity, loss of the value of her vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## COUNT VII
## VICARIOUS LIABILITY AGAINST CARNIVAL FOR THE NEGLIGENCE OF THE SHIP'S MEDICAL STAFF

119.  MS. WILSON hereby adopts and re-alleges each and every allegation in paragraphs 1 through 37, as if set forth herein.

120.  CARNIVAL, through the ship's medical staff (including its physicians and nurses), and the ship's crew, owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

121.  Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

122.  At all times material, the ship's medical staff (including its physicians and nurses), and the ship's crew, were full-time employees and agents of CARNIVAL, subject to its direction

and control, who were engaged in the activity of discharging CARNIVAL'S obligation to make such medical aid and assistance available to its passengers as would an ordinarily prudent person under the circumstances.

123. CARNIVAL is estopped to deny that the ship's medical staff (including its physicians and nurses), and the ship's crew, were its agents and/or employees and/or servants.

124. CARNIVAL directly paid the ship's medical personnel and regular crew a salary (i.e., payment by time) for their work in the ship's hospital and in treating passengers.

125. CARNIVAL created, owned, directly provided, and operated, the medical center to be used by the ship's medical personnel and passengers.

126. CARNIVAL pays to stock the medical center with all supplies, medical machinery, various medicines, and equipment to be used therein, regularly stocking and restocking same.

127. CARNIVAL collected all medical revenues directly from passengers and generated a profit on the sale of medical services, supplies, and equipment made by the ship's medical personnel to the passengers of the vessel.

128. CARNIVAL'S marketing materials described the infirmary in proprietary language.

129. The ship's medical personnel were members of the ship's crew; they were subject to the ship's discipline; they were required to wear the ship's uniforms; they (and, in particular, the ship's physicians) were members of the ship's officer's compliment, and at all times they were subject to termination, or other discipline, by CARNIVAL.

130. CARNIVAL provided the ship's medical personnel certain forms of liability insurance and/or indemnification rights.

131. At all times material hereto, CARNIVAL, through the ship's medical staff (including its physicians and nurses), and the ship's crew, was careless, negligent, and breached its duties as

follows:

    a. Failing to reasonably medically disembark MS. WILSON, including, but not limited to, by failing to give her priority disembarkation status when she reached the port;

    b. Failing to timely call an ambulance and/or to otherwise arrange for MS. WILSON to receive timely treatment for her injuries;

    c. Failing to promptly provide MS. WILSON with proper medical and/or first aid care and attention;

    d. Failing to timely and properly diagnose and/or assess MS. WILSON'S condition;

    e. Failing to timely and properly attend to MS. WILSON, to her injuries, and to her pain;

    f. Failing to provide reasonable medical and/or first aid care;

    g. Failing to timely and properly treat and care for MS. WILSON;

    h. Failing to timely and properly examine MS. WILSON'S injuries;

    i. Failing to take proper measures to secure proper treatment for MS. WILSON, including unreasonably delaying taking measures to secure such proper treatment;

    j. Failing to properly bring and/or arrange for MS. WILSON to be brought to an emergency room within a reasonable amount of time; and/or

    k. Failing to give MS. WILSON proper discharge instructions.

132. Pain is a frequently experienced, yet oftentimes overlooked factor in wound care and wound healing. It is undeniable that pain affects wound care practice, and unresolved pain negatively impacts both wound healing and a patient's quality of life.

133.  Under the doctrine of Respondeat Superior, employers are vicariously liable for the negligent acts or omissions by their employees and/or other agents within the course of their employment and/or agency.

134.  CARNIVAL is therefore vicariously liable for all injuries and damages sustained by MS. WILSON as a result of the negligence of the ship's medical staff (including its physicians and nurses), and the ship's crew.

135.  At all times material hereto, the aforementioned acts and/or omissions on the part of CARNIVAL'S ship's medical staff (including its physicians and nurses), and the ship's crew, fell below the standard of care.

136.  The negligence of CARNIVAL'S ship's medical staff (including its physicians and nurses), and the ship's crew, proximately caused MS. WILSON great bodily harm in that, but for CARNIVAL negligence, MS. WILSON'S injuries would not have occurred and/or said injuries would have been substantially lessened.

137.  CARNIVAL, through its employees and agents, to wit, the ship's medical staff, knew or should have known that the medical procedures they employed violated and/or did not meet reasonable standards of medical care.

138.  As a result of CARNIVAL'S negligence, MS. WILSON has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, lost wages, and loss of future earning capacity, loss of the value of MS. WILSON'S vacation, cruise, and transportation costs.

139.  The losses are permanent and/or continuing in nature.

140.  MS. WILSON has suffered these losses in the past and will continue to suffer such

loses in the future.

**WHEREFORE**, Plaintiff, CAROLYN WILSON, demands Judgment against Defendant, CARNIVAL CORPORATION, a Panamanian Corporation, d/b/a CARNIVAL CRUISE LINE, for damages suffered and costs incurred, as well as for damages and costs that MS. WILSON will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, scarring, disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of independence, lost wages, and lost earning capacity, loss of the value of her vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

**COUNT VIII**
**APPARENT AGENCY**
**FOR THE ACTS OF THE SHIP'S MEDICAL STAFF**

141.  MS. WILSON hereby adopts and re-alleges each and every allegation in paragraphs 1 through 37, as if set forth herein.

142.  At all times material hereto, the ship's medical staff represented to MS. WILSON and to the ship's passengers as employees and/or agents and/or servants of CARNIVAL, in that:

a.  Medical staff wore a ship's uniform;

b.  Medical staff ate with the ship's crew;

c.  Medical staff was under the commands of the ship's officers;

d.  Medical staff worked in the ship's medical department;

e.  Medical staff was paid a salary by CARNIVAL;

f.  Medical staff worked aboard the vessel; and/or

g.  Medical staff spoke to MS. WILSON as though they had authority to do so by

CARNIVAL.

143. In addition, CARNIVAL further represented to MS. WILSON that the vessel's medical staff were agents and/or employees of CARNIVAL through its marketing materials and through other official statements that described the infirmary in proprietary language, including language such as "Carnival *Mardi Gras*' Medical Center/our infirmary/our medical center," and through encouraging MS. WILSON to make use of "its" infirmary/medical center if MS. WILSON was in need of medical attention.

144. Furthermore, at no time did CARNIVAL represent to MS. WILSON in particular, or the ship's passengers in general, in a meaningful way that the vessel's medical staff were not agents or employees of CARNIVAL.

145. At all material times, MS. WILSON reasonably relied on the representations to MS. WILSON'S detriment that the medical staff were employees, and/or agents, and/or servants of CARNIVAL.

146. It was reasonable to believe that the medical staff were CARNIVAL'S agents because they wore a ship's uniform. In addition, at all times material, the medical staff spoke and acted as though they were authorized to do so by CARNIVAL.

147. This reasonable reliance was detrimental because it delayed MS. WILSON from receiving proper medical treatment and/or MS. WILSON would not have gone on the subject cruise with CARNIVAL had MS. WILSON known that the medical staff on the ship were not CARNIVAL'S agents.

148. CARNIVAL is estopped to deny that the medical staff were its apparent agents, and/or apparent employees, and/or apparent servants.

149. CARNIVAL had a duty to provide MS. WILSON with reasonable care under the

circumstances and through the acts of its apparent agents breached its duty to provide MS. WILSON with reasonable care under the circumstances.

150. MS. WILSON'S injuries were aggravated due to the fault and/or negligence of CARNIVAL through the acts of its apparent agents as follows:

    a.  Failing to reasonably medically disembark MS. WILSON;

    b.  Failing to timely call an ambulance and/or to otherwise arrange for MS. WILSON to receive timely treatment for her injuries;

    c.  Failing to promptly provide MS. WILSON with proper medical and/or first aid care and attention;

    d.  Failing to timely and properly diagnose and/or assess MS. WILSON'S condition;

    e.  Failing to timely and properly attend to MS. WILSON, her injuries, and her pain;

    f.  Failing to provide reasonable medical and/or first aid care;

    g.  Failing to timely and properly treat and care for MS. WILSON;

    h.  Failing to timely and properly examine MS. WILSON's injuries;

    i.  Failing to take proper measures to secure proper treatment for MS. WILSON, including unreasonably delaying taking measures to secure such proper treatment;

    j.  Failing to properly bring and/or arrange for MS. WILSON to be brought to an emergency room within a reasonable amount of time; and/or

    k.  Failing to give MS. WILSON proper discharge instructions.

151. Pain is a frequently experienced, yet oftentimes overlooked factor in wound care and wound healing. It is undeniable that pain affects wound care practice, and unresolved pain

negatively impacts both wound healing and a patient's quality of life.

152. As a result of CARNIVAL'S negligence, MS. WILSON has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, lost wages, loss of future earning capacity, loss of the value of her vacation, cruise, and transportation costs.

153. The losses are either permanent or continuing in nature.

154. MS. WILSON has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, CAROLYN WILSON, demands Judgment against Defendant, CARNIVAL CORPORATION, a Panamanian Corporation, d/b/a CARNIVAL CRUISE LINE, for damages suffered and costs incurred, as well as for damages and costs that MS. WILSON will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, scarring, disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value her vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## COUNT IX
## ASSUMPTION OF DUTY FOR THE
## NEGLIGENCE OF THE SHIP'S MEDICAL STAFF

155. MS. WILSON hereby adopts and re-alleges each and every allegation in paragraphs 1 through 37, as if set forth herein.

156. CARNIVAL owed MS. WILSON the duty to exercise reasonable care under the

circumstances for the safety of its passengers.

157.  Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

158.  CARNIVAL elected to discharge this duty by having MS. WILSON seen by its own ship's physicians and/or other crew members.

159.  As such, CARNIVAL voluntarily assumed a duty for the benefit of MS. WILSON to use reasonable care in the provision of medical services to MS. WILSON.

160.  At all times material hereto, CARNIVAL was careless, negligent, and breached its duties due to the fault and/or negligence of CARNIVAL through the acts of its apparent agents by:

    a.  Failing to reasonably medically disembark MS. WILSON;

    b.  Failing to timely call an ambulance and/or to otherwise arrange for MS. WILSON to receive timely treatment for her injuries;

    c.  Failing to promptly provide MS. WILSON with proper medical and/or first aid care and attention;

    d.  Failing to timely and properly diagnose and/or assess MS. WILSON'S condition;

    e.  Failing to timely and properly attend to MS. WILSON, her injuries, and her pain;

    f.  Failing to provide reasonable medical and/or first aid care;

    g.  Failing to timely and properly treat and care for MS. WILSON;

    h.  Failing to timely and properly examine MS. WILSON's injuries;

    i.  Failing to take proper measures to secure proper treatment for MS. WILSON, including unreasonably delaying taking measures to secure such proper treatment;

      j.   Failing to properly bring and/or arrange for MS. WILSON to be brought to an emergency room within a reasonable amount of time; and/or

      k.   Failing to give MS. WILSON proper discharge instructions.

161. At all times material hereto, the aforementioned acts or omissions on the part of CARNIVAL fell below the standard of care.

162. CARNIVAL'S negligence proximately caused MS. WILSON great bodily harm in that, but for CARNIVAL'S negligence, MS. WILSON'S injuries would not have occurred, would have been substantially lessened, and/or would not have been aggravated.

163. CARNIVAL, through its employees and agents, to wit, the ship's medical staff, knew, or should have known, that the medical procedures they employed violated reasonable standards of medical care.

164. As a result of CARNIVAL'S negligence, MS. WILSON has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, lost wages, loss of future earning capacity, loss of the value of her vacation, cruise, and transportation costs.

165. The losses are permanent and/or continuing in nature.

166. MS. WILSON has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, CAROLYN WILSON, demands Judgment against Defendant, CARNIVAL CORPORATION, a Panamanian Corporation, d/b/a CARNIVAL CRUISE LINE, for damages suffered and costs incurred, as well as for damages and costs that MS. WILSON will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, scarring,

disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of independence, lost wages, lost earning capacity, loss of the value of her vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, CAROLYN WILSON, demands trial by jury on all issues so triable.

**Dated:** July 5, 2022.

Respectfully submitted,

*/s/ Spencer M. Aronfeld*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@aronfeld.com
**Riana S. Maryanoff, Esq.**
Florida Bar No.: 1024768
rmaryanoff@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**Matthias M. Hayashi, Esq.**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
*Attorneys for Plaintiff*